STATE of Iowa, Appellee,

v.

Pamela Mary CHRISTIANSON,
Appellant.

No. 99–2034.

Supreme Court of Iowa.

May 31, 2001.

Richard Stochl of Elwood, O'Donohoe,
Stochl, Braun & Churbuck, New Hampton,
for appellant.

Thomas J. Miller, Attorney General, Jean C. Pettinger, Assistant Attorney General, and Joseph M. Haskovec, County Attorney, for appellee.

LARSON, Justice.

Pamela Christianson has appealed her conviction and sentence for involuntary manslaughter under Iowa Code section 707.5(1) (1997). The issue raised is one of first impression: whether the results of a blood alcohol test are admissible, under the doctrine of inevitable discovery, despite a lack of reasonable grounds to believe the defendant was intoxicated at the time a sample of blood was taken for alcohol analysis. We conclude the doctrine of inevitable discovery is inapplicable to our implied-consent law and therefore reverse the conviction.

## I. *Facts and Prior Proceedings.*

On February 14, 1998, at approximately 1:55 a.m., the defendant's vehicle crossed the centerline on a highway in Howard County and collided head-on with a vehicle driven by Todd Borlaug. Borlaug later died from his injuries. When a sheriff's deputy, Gordon Buss, spoke with the defendant at the scene, he noticed no odor or other sign of alcohol consumption. The defendant was transported to a hospital.

Deputy Buss secured the scene of the accident and went to the hospital where, at 3:23 a.m., he invoked the implied-consent procedure of Iowa Code section 321J.6. The deputy invoked implied consent despite the fact he had no reason to believe the defendant was intoxicated or even that she had been drinking. Before invoking implied consent, he did not perform any field sobriety tests, request a preliminary breath test, or in fact, have any reason to think the defendant had been drinking other than her involvement in an accident very early on a Saturday morning. The blood sample showed a blood alcohol level of .14, which is over the level of presumed intoxication under our statutes. See Iowa Code § 321J.2(1)(b).

Meanwhile, state trooper Rick Busch arrived at the accident scene. This was approximately an hour after the accident. He did a preliminary investigation and determined the defendant's car was on the wrong side of the highway and had made no attempt to stop before colliding with Borlaug's car. Trooper Busch testified he detected a faint odor of alcohol in the defendant's car, but he found no empty alcohol containers or other sign of alcohol involvement. He related his findings to deputy Buss by radio, at approximately 4 a.m. By that time, Buss had already invoked implied-consent proceedings.

The defendant moved to suppress the blood test on the ground it was not properly obtained under our implied-consent statute because it was not based on the officer's reasonable grounds to believe the defendant was intoxicated. See Iowa Code § 321J.6(1). In ruling on the motion to suppress, the district court agreed that deputy Buss did not have reasonable grounds to invoke implied consent at the time he did it. The court nevertheless concluded that trooper Busch's "knowledge alone or coupled with Deputy Buss's [knowledge] provided reasonable grounds for invoking implied consent." The court ruled the evidence of the blood test result was admissible under the doctrine of inevitable discovery.

The court, in a bench trial on stipulated facts, found the defendant guilty of invol-

untary manslaughter and sentenced her to an indeterminate term of imprisonment not to exceed five years. The court also ordered her to pay $150,000 in restitution to the victim's estate as provided by Iowa Code section 910.3B.

## II. *Inevitable Discovery.*

■ The defendant contends that the blood test was illegal because the officer who invoked implied consent did not have reasonable grounds to believe she was intoxicated at the time he did so. The State counters that, even if the blood was withdrawn at a time when reasonable grounds were lacking, the later-acquired evidence via the radio call from trooper Busch would inevitably have been received, and it provided the necessary grounds to invoke implied consent, even though the invocation was premature. According to the State, the officers should be allowed to consider the later-acquired evidence, under the doctrine of inevitable discovery, to show reasonable grounds as of the time implied consent was invoked.

■ The State misconstrues the role of the inevitable-discovery doctrine. Inevitable discovery is a doctrine to determine whether the exclusionary rule should be applied to Fourth Amendment violations. It is based on the premise that relevant, probative evidence gathered despite Fourth Amendment violations is not constitutionally excluded when the police would have inevitably discovered the same evidence acting properly. We explained the doctrine in *State v. Seager*, 571 N.W.2d 204 (Iowa 1997).

[I]f the police have obtained or would have obtained evidence through a source unrelated to the illegality, the chal-

lenged evidence is admissible because to exclude such evidence would "put the police in a worse position than they would have been in absent any error or violation."

*Id.* at 211 (quoting *Nix v. Williams*, 467 U.S. 431, 443, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377, 387 (1984)). This is because the exclusionary rule is not itself a constitutional right but a means of deterring future police misconduct. The deterrence rationale starts to break down and creates a windfall for the defendant if, by acting properly, the police would have inevitably discovered the same evidence.

The situation with implied consent is different. It is a statutory presumption of consent to testing that arises only as to those drivers whom the officers have reasonable grounds to suspect have driven under the influence of alcohol. Our implied-consent law is found in Iowa Code chapter 321J, which provides in relevant part:

A person who operates a motor vehicle in this state *under circumstances which give reasonable grounds to believe that the person has been operating a motor vehicle in violation of section 321J.2 or 321J.2A* is deemed to have given consent to the withdrawal of specimens of the person's blood, breath, or urine and to a chemical test or tests of the specimens for the purpose of determining the alcohol concentration or presence of drugs, subject to this section. The withdrawal of the body substances and the test or tests shall be administered at the written request of *a peace officer having reasonable grounds to believe that the person was operating a motor vehicle in violation of section 321J.2 or 321J.2A,* and if any of the following conditions exist:

. . . .

*b.* the person has been involved in a motor vehicle accident or collision resulting in personal injury or death.

Iowa Code § 321J.6(1) (emphasis added).

Condition *b*, involvement in a personal injury collision, is undisputed. The key to this case is whether the officer had reasonable grounds to believe the defendant was operating a motor vehicle in violation of the OWI chapter. We note that not every driver is deemed by section 321J.6 to have given consent to a test; it is only those drivers as to whom there are "reasonable grounds to believe that the person was operating a motor vehicle [while intoxicated]. . . ."

█ The wording of Iowa Code section 321J.6(1) does not lend itself to an interpretation that would allow reasonable grounds to be based on later-acquired evidence.

The withdrawal of the body substances and the test or tests shall be administered at the written request of a peace officer *having reasonable grounds* to believe that the person was operating a motor vehicle in violation of section 321J.2 or 321J.2A. . . .

(Emphasis added.) Under this statute, the reasonable grounds must come first, then the invocation of implied-consent proceedings. The statute clearly means the proceedings are to be invoked by "a peace officer *[then]* having reasonable grounds. . . ." We have said as much in our prior cases, although these cases did not involve the issue of inevitable discovery. For example, we said in *Reed v. Iowa Department of Transportation,* 478 N.W.2d 844, 846 (Iowa 1991):

Clearly, as the [provisions of section 321J.6(1) ] confirm, the implied-consent

statute cannot be invoked unless the officer *first* has reasonable grounds to believe the driver has been operating a motor vehicle while intoxicated.

(Emphasis added.) *See also State v. Boleyn,* 547 N.W.2d 202, 205 (Iowa 1996) ("The reasonable grounds test is determined under the facts and circumstances known to the officers at the time the implied consent law is invoked."); *Munson v. Iowa Dep't of Transp.,* 513 N.W.2d 722, 725 (Iowa 1994) ("The reasonable grounds test is met 'when the facts and circumstances known to the officer *at the time action was required* would have warranted a prudent person's belief that an offense has been committed.'") (Emphasis added) (quoting *State v. Braun,* 495 N.W.2d 735, 738 (Iowa 1993)). This interpretation does not permit later-acquired evidence to be considered on the issue of whether implied consent should be invoked. In other words, the existence of reasonable grounds is a condition precedent to imposition of implied consent.

There is another reason for strictly applying our implied-consent statute—the sensitive and unique nature of any procedures involving intrusions into the human body. The Supreme Court recognized this in *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). The Court acknowledged the general right of officers to search persons incident to a lawful arrest but said:

Whatever the validity of these considerations in general, they have little applicability with respect to searches involving intrusions beyond the body's surface. The interests in human dignity and privacy which the Fourth Amendment protects forbid any such intrusions on the mere chance that desired evidence might be obtained.

*Id.* at 769–70, 86 S.Ct. at 1835, 16 L.Ed.2d at 919. While the Court recognized the right of officers in some cases to make body-invasive searches, it said:

It bears repeating, however, that we reach this judgment only on the facts of the present record. The integrity of an individual's person is a cherished value of our society. That we today hold that the Constitution does not forbid the States['] minor intrusions into an individual's body *under stringently limited conditions* in no way indicates that it permits more substantial intrusions or intrusions under other conditions.

*Id.* at 772, 86 S.Ct. at 1836, 16 L.Ed.2d at 920 (emphasis added).

While the officers in this case appear to have acted in good faith, an interpretation of our implied consent statute that would allow the drawing of body specimens without then-existing reasonable grounds, perhaps to be bolstered by later-acquired evidence, would be the antithesis of the "stringently limited conditions" required by the Fourth Amendment.

We agree with the defendant that the officers' failure to invoke implied-consent proceedings on the basis of existing reasonable grounds requires that this conviction be reversed. This resolution makes it unnecessary to address the defendant's restitution argument.

**REVERSED AND REMANDED.**