# IN THE COURT OF APPEALS OF IOWA

No. 17-1369
Filed December 19, 2018

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**TODD JUNIOR LANDIS,**
        Defendant-Appellant.

_____

Appeal from the Iowa District Court for Polk County, David N. May, (suppression) and Donna L. Paulsen (trial), Judges.

A defendant appeals his judgment and sentence for operating while intoxicated and possession of a controlled substance, third offense. **CONVICTIONS AFFIRMED; SENTENCING ORDER VACATED IN PART AND REMANDED.**

Mark C. Smith, State Appellate Defender, and Mary K. Conroy, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**TABOR, Judge.**

Todd Landis challenges his convictions for operating while intoxicated (OWI) and possession of a controlled substance, third offense, enhanced by his habitual-offender status. Landis contends the district court should have excluded the marijuana police took from his pocket thirty minutes before arresting him for OWI. The court found the marijuana admissible under the search-incident-to-arrest exception to the warrant requirement and the inevitable-discovery doctrine. We agree with the court's reliance on inevitable discovery. The State proved jail personnel would have found the contraband during the OWI booking process.

Landis also challenges his sentence. He alleges the district court gave only "boilerplate" reasons for incarceration. To the contrary, the court explained its rationale, emphasizing Landis's prior convictions and "experience on probation." As a result, we can review its exercise of discretion and affirm the concurrent prison terms. On Landis's final issue, we remand for entry of a corrected sentencing order assessing the costs of his dismissed simple-misdemeanor charge to the State.

## I.     Facts and Prior Proceedings

Around 11:15 on a Sunday morning, Landis ran a red light in downtown Des Moines. He crashed his Jeep Compass into another motorist crossing the intersection. Police Officer Eric Moorman and State Trooper Matthew Raes both responded to the collision.

Officer Moorman found Landis standing outside his Jeep, which suffered heavy front-end damage. The officer "smelled the odor of alcoholic beverage" when he approached Landis. Landis told the officer "somebody hit him and took off." During their conversation, the officer also noticed Landis was slurring his

speech and was "slow about thinking, seemed confused." Officer Moorman—who has more than thirty years of law enforcement experience—believed Landis was intoxicated and called a traffic officer, Ryan King, "to come down and test him."

Upon arrival, Trooper Raes first checked on the welfare of the other driver, who was still at the scene. When he made contact with Landis, the trooper noted "bloodshot, watery eyes and a very strong odor of an alcoholic beverage coming from his person."

During their interaction outside the cars, which occurred around 11:30 a.m., Officer Moorman and Trooper Raes searched the front pocket of Landis's shorts. They pulled out a clear plastic bag containing "a green leafy substance which looked and smelled like marijuana; a drug cutter, [which] cuts the marijuana; and a dope pipe." Neither Trooper Raes nor Officer Moorman told Landis he was under arrest. In fact, Officer Moorman turned the investigation over to Officer King.

Landis was waiting in Officer Moorman's patrol car when Officer King arrived. Officer King recalled "an odor of alcoholic beverages that could be detected coming from the rear of the patrol car." As part of his investigation, Officer King asked Landis to complete field sobriety tests and a preliminary breath test. But Landis declined. Officer King placed Landis under arrest at noon. At the police station, Landis refused to submit to a breath test.

As a result of this investigation, the State charged Landis with two counts: (1) operating while intoxicated, a serious misdemeanor in violation of Iowa Code section 321J.2 (2016) and (2) possession of marijuana, a class "D" felony in violation of section 124.401(5), as a third offense. The State also invoked the habitual offender provisions under Iowa Code section 902.8. Landis moved to

suppress the marijuana and paraphernalia found in his pocket, alleging the search violated the state and federal constitutions. After a hearing, the district court overruled the motion to suppress. The court held the evidence was admissible under the search-incident-to-arrest exception or, alternatively, under the inevitable-discovery doctrine.

After his unsuccessful suppression motion, Landis waived his right to a jury trial and stipulated to a trial on the minutes of testimony. The district court found him guilty on both counts. After the sentencing hearing, the court denied probation and imposed concurrent prison terms of one year and fifteen years, with a mandatory minimum of three years before eligibility for parole. In its written sentencing order, the court dismissed a related simple misdemeanor charge but ordered Landis to pay court costs on the dismissed case. Landis now appeals.

## II. Scope and Standards of Review

Because Landis raises his first challenge under the Fourth Amendment of the United States Constitution and article I, section 8 of the Iowa Constitution, our review is de novo. *See State v. Brown*, 905 N.W.2d 846, 848 (Iowa 2018). We review his second and third issues, involving the sentencing proceeding, for legal error. *See State v. Hensley*, 911 N.W.2d 678, 681 (Iowa 2018).

## III. Analysis

### A. Should the district court have excluded the marijuana evidence?

Landis moved to suppress the marijuana and drug paraphernalia seized by Officer Moorman and Trooper Raes. He cited both the Iowa and United States

constitutions.[1]  Both constitutions protect the rights of individuals to be "secure in their persons" against unreasonable searches and seizures.  U.S. Const. amend. IV; Iowa Const. art. I, § 8.  "Warrantless searches and seizures are per se unreasonable, unless one of the few carefully drawn exceptions to the warrant requirement exists."  *State v. Freeman*, 705 N.W.2d 293, 297 (Iowa 2005).

A search incident to arrest qualifies as an exception.  *See State v. Gaskins*, 866 N.W.2d 1, 8 (Iowa 2015) (reiterating purpose as officer safety and evidence preservation implicated by custodial situations).  A search incident to an arrest is valid even if it precedes a formal arrest when the search is "substantially contemporaneous" with the suspect being taken into custody.  *State v. Peterson*, 515 N.W.2d 23, 25 (Iowa 1994).  But Landis asserts his arrest—one-half hour after the officers searched his pockets—was not substantially contemporaneous.  He cites Washington case law in support of his contention "a valid custodial arrest is a 'condition precedent to a search incident to arrest as an exception to the warrant requirement' under article I, section 8 of the Iowa Constitution."[2]  *See State v. O'Neill*, 62 P.3d 489, 502 (Wash. 2003).

In defense of the suppression ruling, the State cautions against "reflexively" adopting a new interpretation of the timing required for searches incident to arrest under article I, section 8.  The State also balks at "fixating on the precise number

---

[1] Iowa's appellate courts may "construe a provision of our state constitution differently than its federal counterpart, though the two provisions may contain nearly identical language and have the same general scope, import, and purpose."  *See State v. White*, 887 N.W.2d 172, 175–76 (Iowa 2016).

[2] Landis asked the supreme court to retain this appeal to adopt a narrower interpretation of the search-incident-to-arrest exception under the state constitution.  Instead, the supreme court transferred the case to us.

of minutes" between the search and formal arrest. In the prosecution's view, Officer Moorman manifested his intent to arrest Landis just after the search.[3]

Rather than diving into the murky waters of searches incident to arrest, we opt to resolve this appeal on the alternative grounds offered by the inevitable-discovery doctrine. Under that doctrine, probative evidence—even if gathered illegally—is admissible without offending the constitution if police would have "inevitably discovered the same evidence acting properly." *State v. Christianson,* 627 N.W.2d 910, 912 (Iowa 2001). If the police would have ultimately discovered the evidence by lawful means, using the Fourth Amendment to exclude the evidence serves no legitimate purpose. *State v. Seager,* 571 N.W.2d 204, 211 (Iowa 1997).

For three reasons, Landis claims inevitable discovery should not save the State's evidence. In his estimation, (1) the State failed to prove admissibility under the federal test; (2) courts should not recognize the inevitable-discovery doctrine under article I, section 8; or (3) courts should impose greater restrictions on the doctrine under article I, section 8. We are not at liberty to depart from precedent, and Landis directed his second and third requests to our supreme court. *See State v. Beck*, 854 N.W.2d 56, 64 (Iowa Ct. App. 2014),

Because our supreme court has so far followed federal constitutional law on inevitable discovery, we do the same today. *See generally State v. Tyler*, 867

---

[3] The State cites *State v. Moorehead*, 699 N.W.2d 667, 672 (Iowa 2005), but does not discuss how that case supports the proposition the officer's subjective "intent to arrest" affects our analysis of whether the search was "substantially contemporaneous" or whether an officer's intent makes it more or less likely the arrest was "substantially contemporaneous."

N.W.2d 136, 171 (Iowa 2015) (citing *State v. McGrane,* 733 N.W.2d 671, 681 (Iowa 2007) and *Christianson,* 627 N.W.2d at 912 (both quoting *Nix v. Williams*, 467 U.S. 431, 443–44 (1984))). As a result, we will address only Landis's first reason for rejecting application of inevitable discovery—that the prosecution failed to show an exception to the exclusionary rule under the Fourth Amendment.

Assuming the officers illegally searched Landis's pocket, we must decide if the Fourth Amendment required the district court to exclude the fruits of that illegality. Competing virtues are at stake. Exclusion deters future police misconduct. But suppressing relevant information also exacts a price on society and the administration of justice. *Seager*, 571 N.W.2d at 211. Our supreme court summarized the tension:

> The exclusionary rule ensures the prosecution does not gain an advantage from the illegality that it would not otherwise have had. In this way, the rule discourages illegal police conduct. On the other hand, the exceptions to the exclusionary rule assure the prosecution is not put in a worse position than it would have been in had the police misconduct not occurred.

*Id.*

Here, the prosecution gained no advantage by the premature seizure of the marijuana from Landis's pocket. The district court properly denied his motion to suppress because officers would have inevitably discovered the contraband when booking him into the county jail on the OWI charge.[4] Officer King testified "upon completion of the testing and the charges being filed," officers typically transport an arrestee to the Polk County jail where the arrestee would be searched as part

---

[4] On the dashboard camera recording, Landis repeatedly asks the officers about posting bond. Officer Moorman explains he will not know the amount of bond until he takes Landis to the jail for booking.

of the booking process. The inevitable-discovery exception to the exclusionary rule applies to evidence officers would have legally seized at the jail. *See State v. Green*, No. 06-2051, 2008 WL 680385, at *5 (Iowa Ct. App. Mar. 14, 2008).

Like our court in *Green*, other jurisdictions have recognized the inevitability of finding evidence during booking. *See, e.g.*, *United States v. Peterson*, 902 F.3d 1016, 1020 (9th Cir. 2018) (upholding district court conclusion "warrantless search of Peterson's backpack was not justified as a search incident to arrest, but that the evidence nonetheless was not subject to exclusion because it inevitably would have been discovered during an inventory search at the time of booking"); *United States v. Almeida*, 748 F.3d 41, 49 (1st Cir. 2014) (holding "arrest and subsequent seizure of cash during the booking process at the jail would have occurred independently of the challenged seizure."); *State v. Rodewald*, 376 N.W.2d 416, 418, 422 (Minn. 1985) (finding jailer would have inevitably discovered LSD blotter in arrestee's wallet and seized it); *State v. Frazee*, No. 26699, 2015 WL 7428574, at *6 (Ohio Ct. App. Nov. 20, 2015) ("Even if the search of Frazee's coat and its contents did not qualify as a search incident to arrest, we agree with the State's argument that the heroin would still be admissible because it would have been inevitably discovered by law enforcement during a routine inventory search when Frazee was booked into jail."); *State v. Johnson*, No. M2013–00301–CCA–R3–CD, 2014 WL 2016712, at *10 (Tenn. Crim. App. May 15, 2014) ("It is clear from the testimony that a search of the Defendant as a part of a normal administrative booking procedure at the jail was imminent."). These decisions provide persuasive authority for declining to apply the exclusionary rule. In like manner, we affirm the suppression ruling based on inevitable discovery.

**B. Did the district court give sufficient reasons for its sentence?**

If unsuccessful in his suppression claim, Landis wishes to be resentenced. He contends by relying too heavily on boilerplate[5] language, the district court failed to satisfy its mandate to "state on the record its reason for selecting a particular sentence." *See* Iowa R. Crim. P. 2.23(3)(d). The district court's statement of reasons enables the reviewing court "to assess whether there has been an abuse of discretion in sentencing." *See State v. Thacker*, 862 N.W.2d 402, 407 (Iowa 2015) (warning a "boilerplate language approach" will not satisfy the rule).

We find enough original content in the sentencing court's statements to evaluate its exercise of discretion. It is true the sentencing court prefaced its reasons by reciting the generic language of Iowa Code section 901.5:

> I've considered all my options under Iowa Code Chapters 901 and 907, and my judgment relative to sentence is based on that which would provide maximum opportunity for rehabilitation of the defendant, as well as protection of the community against further offenses by defendant and others.

But then the court visited the factors it found pertinent to imposing a sentence of incarceration:

> In selecting a particular sentence for you, I've considered, among other things, the presentence investigation [PSI] report, the statements of counsel, your statement, your age, your criminal record, your prior—including your prior convictions, your experience on probation.

---

[5] The law imported the word "boilerplate" from the early newspaper industry, where it referred to syndicated news stories shipped on metal plates to supplement local news in small-town papers. *See* Carol Bast, *A Short History of Boilerplate*, 5 Scribes J. Leg. Writing 155, 156 (1995). Duplicating news articles resembled duplicating iron plates for steam boilers. *Id.* The term became a derogatory description of duplicated content. *Id.*

Significantly, the PSI revealed Landis had been "sentenced to probation seven times (four revoked, two discharged, one discharge status unable to determine), prison six times (discharged six times), work release once (revoked), and parole once (revoked)." Unsurprisingly, the PSI preparer recommended incarceration based on Landis's "lengthy criminal history" and "poor compliance during previous periods of community supervision." We can decipher from the sentencing court's nod to the PSI and mention of Landis's "prior convictions" and his "experience on probation" it took that recommendation to heart.

The court then listed additional factors influencing its decision to impose concurrent prison terms.

> I've considered your employment circumstances, your family circumstances, the nature of this offense committed—I guess the two offenses we're dealing with here today, all in light of your overall prospects for rehabilitation and what's needed to protect the community.

While the sentencing court could have delivered a more personalized rationale, its statements rose above the dreaded boilerplate.

Landis also expresses concern the sentencing court did not know it could suspend his sentence. *See State v. Washington*, 356 N.W.2d 192, 197 (Iowa 1984) (interpreting Iowa Code section 902.8 as allowing probation). The record does not credit that concern. The prosecutor endorsed the PSI's recommendation of incarceration for the protection of the community. In doing so, the clear implication was the court had discretion to place Landis on probation. What's more, the court expressly stated it considered its options under chapter 907, which governs suspended sentences and probation. On this record, we affirm the concurrent prison terms.

**C. Did the district court err in assessing costs of the dismissed charge?**

On a final limited note, Landis complains the written order that he pay costs associated with a dismissed charge is "a statutorily unauthorized, illegal sentence." The State agrees with Landis's assertion an assessment of court costs for the dismissed simple misdemeanor charge would be an illegal sentence. *See State v. Petrie*, 478 N.W.2d 620, 622 (Iowa 1991) ("[T]he provisions of Iowa Code section 815.13 and section 910.2 clearly require, where the plea agreement is silent regarding the payment of fees and costs, that only such fees and costs attributable to the charge on which a criminal defendant is convicted should be recoverable under a restitution plan."). We vacate this portion of Landis's sentence and remand for entry of a corrected order. *See Brown*, 905 N.W.2d at 857.

**CONVICTIONS AFFIRMED; SENTENCING ORDER VACATED IN PART AND REMANDED.**