# IN THE COURT OF APPEALS OF IOWA

No. 18-0915
Filed July 24, 2019

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**JAMIE MICHAEL UBBEN,**
     Defendant-Appellant.

_____

Appeal from the Iowa District Court for Grundy County, Jeffrey L. Harris, District Associate Judge (motion to suppress) and Bradley J. Harris, Judge (trial).

The defendant appeals from his convictions for carrying weapons and operating while intoxicated. **AFFIRMED.**

R. A. Bartolomei of Bartolomei & Lange, P.L.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Mullins, P.J., Bower, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**BLANE, Senior Judge.**

Jamie Michael Ubben appeals from his convictions for operating while intoxicated (OWI) and carrying weapons. He contends the district court erred in not suppressing the gun found during an allegedly unconstitutional search of his vehicle. He also argues the arresting officer interfered with his statutory right to make a phone call under Iowa Code section 804.20 (2016) and his refusal to take a breath test should have been suppressed.

We find the gun was admissible as an inevitable discovery made during the lawful inventory search of Ubben's truck. We also find no violation of Ubben's rights under section 804.20 and, in addition, any alleged violation was harmless.

## I. FACTS AND PRIOR PROCEEDINGS

At dusk on a cold Christmas Eve, December 24, 2016, Grundy County Sheriff's Deputies Kirk Dolleslager and Josh Ritchey were dispatched to a snow-covered, rural county road in response to several reports. They found a truck parked "dead center" in the middle of the road, still running, and blasting loud music. The driver was "passed out" in the driver's seat with his feet on the dash and a hat pulled down over his face. Despite the loud music, it took close to twelve minutes for the deputies to rouse the driver, Ubben.[1] In plain view from the windows of the truck, the deputies could see packs of Busch Light beer, a gun holster, and a magazine clip in a cup holder.

---

[1] The dashboard camera shows Deputy Dolleslager banging vigorously on the vehicle's window, turning on his patrol car's flashing lights, honking the horn, moving his patrol car closer, and turning on his sirens, all to no avail.

Ubben eventually was awakened. The deputies could smell alcohol from outside the truck and on Ubben's person. The deputies patted him down and placed him in a patrol car. Ubben had slurred speech, bloodshot and watery eyes, poor balance, and a poor grasp of the situation: he said he did not know where he was, where he came from, or where he had been going. He failed a horizontal gaze nystagmus (HGN) test. He was unable to follow directions in reciting the alphabet or counting numbers.

Ubben told the deputies he had a dead mountain lion in the back of his truck but, despite deputies seeing beer, the holster, and magazine clip, he denied having any alcohol or weapons. He indicated he had a concealed carry permit. Eventually, he told the deputies he had been hunting mountain lions in Utah. One of the deputies administered a preliminary breath test and found he had a blood alcohol level two times the legal limit. Leaving Ubben in the patrol car, the two deputies held a brief conversation, opened the doors of the truck, and looked inside. They found a handgun lying on the passenger's seat next to the passenger seat armrest. It had no cover or case.

They returned to the patrol car and informed Ubben he was under arrest for OWI and for carrying weapons. Deputy Dolleslager helped Ubben buckle his seatbelt and transported him to the Grundy County jail while Deputy Ritchey stayed behind to inventory and impound the truck. Ubben was charged with OWI and carrying weapons.[2]

---

[2] Although Ubben has a concealed carry permit, Iowa Code section 724.4(1) prohibits carrying a concealed weapon while intoxicated.

At the suppression hearing, Deputy Ritchey testified it is the policy of their law enforcement agency that vehicles are inventoried and towed after an arrest unless circumstances exist where the vehicle cannot be towed or it is located on private property. He also testified because the truck was "dead center" "in the middle of the traveled portion of the gravel road," it had to be towed. He testified he and Deputy Dolleslager discussed the situation and he understood that Ubben was under arrest. He stated deputies did not open the doors until he began his inventory search. He then called for a tow truck and began making his "tow report." Dashboard camera video shows Ritchey readied his camera shortly after Deputy Dolleslager left with Ubben and proceeded to photograph the exterior and interior of the truck. The tow truck arrived about ten minutes later.

Ubben moved to suppress the gun, alleging the search of his vehicle violated the Iowa and Federal Constitutions. He also asserted he was denied his statutory right to make phone calls under Iowa Code section 804.20 and his refusal to take a test should have been suppressed. After a hearing, the district court overruled the motion to suppress. The court found "the peace officers were allowed to impound defendant's vehicle under the facts of this case. The inventory of defendant's vehicle was reasonable." In addition, the court found, "The State's theory of inevitable discovery *would also* support the admissibility of the weapon as it was seized from defendant's vehicle following the impound inventory." (Emphasis added.) On the section 804.20 claim, the court found the officers "did nothing to gut or eviscerate defendant's statutory rights . . . . [A]lthough the defendant clearly indicated an interest in calling an attorney, he inexplicably

elected not to do so even though Deputy Dolleslager repeatedly informed the defendant of his right to call an attorney" or anyone else.

Before trial, Ubben raised his motion to suppress verbally again, and the court reserved its ruling for the trial. Following a trial on the minutes of evidence, the district court found Ubben guilty of operating while intoxicated and carrying weapons. There, the court found, in addition to the inevitable discovery through the inventory search, the vehicle search was justified by the vehicle exception to the warrant requirement and exigent circumstances created by Ubben being passed out in his running vehicle in the middle of a roadway.[3] Ubben appeals.

## II. STANDARDS OF REVIEW

Because Ubben raises his challenges under the Federal and Iowa Constitutions, our review is de novo. *State v. Brown*, 905 N.W.2d 846, 848 (Iowa 2018). We give deference to the district court's fact findings, especially as concerns witness credibility. *State v. Tyler*, 867 N.W.2d 136, 152–53 (Iowa 2015).

We review Ubben's claim under Iowa Code section 804.20 for errors at law because the right is statutory, not constitutional. *See State v. Davis*, 922 N.W.2d 326, 330 (Iowa 2019). If the district court applied the law correctly and substantial evidence supports the court's findings of fact, we will affirm the district court's ruling on a motion to suppress. *Id.*

---

[3] Ubben contends the State may not defend this finding because it did not raise it in the lower court. We need not address this contention as we dispose of the issue under the inevitable discovery doctrine.

**III. ANALYSIS**

**A. Vehicle search**

Both the Federal and Iowa Constitutions protect the rights of individuals to be "secure in their person" against unreasonable searches and seizures. U.S. Const. amend. IV; Iowa Const. art. I, § 8. "Warrantless searches and seizures are per se unreasonable, unless one of the . . . exceptions to the warrant requirement exists." *State v. Freeman*, 705 N.W.2d 293, 297 (Iowa 2005). One such exception is the inevitable-discovery doctrine: probative evidence—even if gathered illegally—is admissible without offending the constitution if police would have "inevitably discovered the same evidence acting properly." *State v. Christianson*, 627 N.W.2d 910, 912 (Iowa 2001). If the police would have ultimately discovered the evidence by lawful means, using the Fourth Amendment to exclude the evidence serves no legitimate purpose. *State v. Seager*, 571 N.W.2d 204, 211 (Iowa 1997). Our supreme court has largely followed federal constitutional law on inevitable discovery. *See generally Tyler*, 867 N.W.2d at 171. Ubben objects to the search on several grounds, each at a distinct point in the chronology of events that evening.[4] But if the deputies would have found the evidence by lawful means after the allegedly unconstitutional search, the evidence need not be excluded. The district court found the gun would have been admissible as an inevitable discovery pursuant to the deputies' lawful inventory search. Because we find this

---

[4] Ubben largely overlooks the point that inevitable discovery is a curative for prior unlawful searches. The State contends because he did not raise this specific challenge to the district court's conclusions below, we may not consider it on appeal. Because that was the basis of the ruling below, we address it.

issue dispositive, we need not address Ubben's multiple claims of an earlier unlawful search.[5]

Warrantless inventory searches and seizures of automobiles are allowed "provided they are conducted pursuant to generally applicable local policy requirements that are 'reasonable.'" *State v. Ingram*, 914 N.W.2d 794, 804 (Iowa 2018). The search must be conducted "pursuant to a standardized local policy." *Id.* If the impoundment and search are authorized by reasonable local policy, it is constitutional. *See id.* It may be invalid if the motorist can show "bad faith" or the inventory was done "for the sole purpose of investigation," both of which are "very high bar[s]." *Id.*

Ubben cites *State v. Gaskins* and *State v. Ingram* in support of his state constitutional claim of an illegal search. In *Gaskins*—a case involving the search of a locked safe found in a vehicle—the Iowa Supreme Court found warrantless searches of containers recovered from a vehicle (locked or otherwise) during a search incident to arrest (SITA) is only justified when necessary to protect the officers or prevent the destruction of evidence. 866 N.W.2d 1, 12–14, 15 (Iowa

---

[5] Ubben takes issue with when Deputy Ritchey initiated the vehicle search, opening the back bed of the truck and finding the dead mountain lion; the non-consensual nature of the search; the fact the gun was not in plain view; the fact that the deputies looked in the truck first without contemporaneously taking photographs or writing out an inventory list; a lack of concern about weapons before the search; a lack of safety or evidentiary concerns before the search; the lack of exigent circumstances; the exact timing of the inventory search alongside the deputies' knowledge whether Ubben was yet under arrest, and others issues. He also challenges the trial court's decision that the automobile exception also justified the warrantless search. Without addressing any error-preservations issues involved, we find we do not need to address these assertions because we dispose of the matter—as did the district court—on the inevitable discovery doctrine.

2015). There was neither a SITA issue here, nor was the gun located in a container.

Ubben next asks this court to apply *State v. Ingram* to find the search was illegal. 914 N.W.2d at 794. In *Ingram*, our supreme court determined,

> With respect to the decision to impound, there is merit to the notion that the police should explore alternative arrangements short of impoundment . . . . If the police goal is truly not investigative but to protect property and avoid false claims, the owner or driver of the vehicle should have the ability to opt for alternatives that do not interfere with public safety other than police impoundment. These options could include park-and-lock options on nearby streets or parking lots or calling a friend or third party to drive the vehicle away. Impoundment of a vehicle should be permitted only if these options have been adequately explored . . . .
>
> In addition, where impoundment is necessary, the next question is whether the police may conduct an inventory search of the vehicle and, if so, what is its scope. First, when impoundment is contemplated, law enforcement should ask the driver whether there is any property in the vehicle the driver wishes to retain. If so, the driver should be allowed to retrieve it.[6] Second, with respect to property left behind, law enforcement may ask the driver whether there is anything of value requiring safekeeping and make a record of the response in order to protect law enforcement from a later claim of theft of valuables.

*Id.* at 820. *Ingram* was decided one year after Ubben's motion to suppress and seventeen months after Ubben's arrest. Ubben does not, except in passing, challenge the search on the basis that the deputies failed to explore alternatives to impoundment or ask him if there was "any property in the vehicle [he] wishe[d] to retain" or "whether there is anything of value requiring safekeeping and mak[ing] a record of the response."[7] *Id.* Nor does Ubben contend with the question of

---

[6] We note that such a requirement is incongruous as to weapons or contraband. *Ingram* leaves unclear whether a motorist in possession of such property derives any benefit whether they identify the property for safekeeping or not.

[7] In his opening brief, Ubben vaguely mentions he was not "given the less intrusive option to simply have the vehicle doors locked and the vehicle towed to be secured in impound."

whether *Ingram* applies to his situation retroactively. *See State v. Philpott*, 702 N.W.2d 500, 504 (Iowa 2005) ("We will decline to consider arguments that do not pinpoint specific questions and objections the overruling of which is alleged to be error."); *Hyler v. Garner*, 548 N.W.2d 864, 876 (Iowa 1996) ("[W]e will not speculate on the arguments [a party] might have made.").

In its ruling, the district court credited Deputy Ritchey's testimony that under the circumstances, it was the general policy of the sheriff's department to inventory and impound vehicles prior to towing, and Ubben did not raise any challenge to this policy. The evidence shows Ubben was highly intoxicated and was not in control of his physical or mental faculties. Even though Deputy Ritchey could not recite the specific conversation, he understood from Deputy Dolleslager that Ubben would be under arrest and charged with OWI. He further testified it is his department's policy that vehicles are inventoried and towed after an arrest and that the location used for impounded vehicles is not a secured lot, so vehicles themselves need to be inventoried and secured. He also testified it was only after his conversation with Dolleslager that he determined the truck would need to be towed, because it was in the middle of the roadway. The policy is a reasonable

---

First, the truck was still running and parked in the middle of a roadway; it could not have been "simply" locked and left there. There were no passengers or anyone close by who could take control of the truck or drive it away. Ubben was extremely intoxicated and unable to identify where he was or where he was going. Next, he suggests the truck be towed and secured in impound, which is what happened; but the officers testified the impound lot is not secure and an inventory was required to secure vehicles left in it. Finally, even just getting in Ubben's truck to move it off the road, the deputies would have been in a position to see the handgun on the passenger seat. In addition, had Ubben been given the opportunity to point out valuable property in the truck he wished to place in safekeeping and identified the gun, the officers would have known immediately he was not in lawful possession. Thus, Ubben does not explain how being offered the *Ingram* alternatives would have assisted him.

one—after receiving calls from the public about the truck parked in the middle of the roadway, it would not have been consistent with public safety to leave it there.[8] And, because the vehicle would have to be stored in an unsecured lot, the contents had to be inventoried for the usual purposes of vehicle inventory. *See Ingram*, 914 N.W.2d at 794 (providing the purpose of an inventory search is the avoidance of false claims and the protection of property). We also find the inventory search was conducted pursuant to the standardized local policy and carried out in a manner authorized by that policy. There is no showing the inventory was done in bad faith or for the sole purpose of investigation.

The inventory search was conducted lawfully and was the inevitable result of Ubben's arrest and the impoundment of his truck, consistent with a reasonable policy and applied reasonably. The gun would have been discovered inevitably in this lawful manner, even if any prior search had been unlawful. We agree with the district court that the gun was admissible as an inevitable discovery made during the lawful inventory search.

## B. Phone calls

Ubben next contends Deputy Dolleslager violated his statutory rights under Iowa Code section 804.20 and the court should have suppressed his refusal to take the breathalyzer test.

> Any peace officer or other person having custody of any person arrested or restrained of the person's liberty for any reason whatever, shall permit that person, without unnecessary delay after arrival at the place of detention, to call, consult, and see a member of the person's family or an attorney of the person's choice, or both. Such person shall be permitted to make a reasonable number of

---

[8] The patrol vehicle video shows the rural county gravel road was snow covered with no adequate shoulder to safely park and lock Ubben's pickup truck on the side of the road.

telephone calls as may be required to secure an attorney. If a call is made, it shall be made in the presence of the person having custody of the one arrested or restrained. If such person is intoxicated, or a person under eighteen years of age, the call may be made by the person having custody. An attorney shall be permitted to see and consult confidentially with such person alone and in private at the jail or other place of custody without unreasonable delay. A violation of this section shall constitute a simple misdemeanor.

Iowa Code § 804.20. We can find error was harmless if the evidence would be merely cumulative. *State v. Garrity*, 765 N.W.2d 592, 597 (Iowa 2009) (finding failure to exclude evidence of defendant's refusal to take breath test was harmless error).

On appeal, Ubben alleges: Dolleslager ignored his request for an attorney; Dolleslager refused to let Ubben make a call from his cellphone in the patrol car during transport; Dolleslager made Ubben wait twelve minutes from their arrival at the law enforcement center before giving him the opportunity to make a call, an unnecessary delay; Dolleslager had a duty to "immediately" assist the defendant in placing a call when the defendant invokes his or her right to a lawyer and Dolleslager failed to act "immediately"; Dolleslager failed in a mandatory duty to inform Ubben who he could call and for what purposes; Dolleslager ended an incoming phone call to Ubben's cellphone.

Upon arriving at the law enforcement center, Dolleslager proceeded booking Ubben into the jail.[9] He read Ubben the implied-consent disclaimer. Ubben asked the deputy what it meant, "in plain English," and Dolleslager responded he could not explain it but allowed Ubben to read it himself. Ubben

---

[9] The events at the law enforcement center were video recorded, and the video was admitted as an exhibit at trial.

then stated he wanted to speak with a lawyer. Dolleslager showed Ubben the implied-consent form and asked him to sign under either "consent" or "refuse." Dolleslager then immediately said,

> If you want to contact an attorney to explain it to you, you can do that. You can contact a family member, I don't care who you contact. You can contact anybody you want if you need help on determining whether you were going to take this test or not. So, if you have anybody in mind you can let me know and we'll get ahold of them.

Ubben replied, "I'd like to contact somebody" and eventually said his dad. After a brief telephone conversation with his father, Ubben hung up and told Dolleslager he did not consent to the test. Dolleslager gave Ubben the opportunity to call anyone else, offering to obtain numbers from his cellphone. Ubben called "Sarah" and spoke with her for about two minutes. While Ubben was talking to Sarah on the jail phone, Ubben's cell phone started to ring, which was disrupting Ubben's phone call with Sarah. Dolleslager terminated the ringing so Ubben could continue his discussion with Sarah. After completing his calls, Ubben signed his refusal to consent to the breath test. Dolleslager conformed to the requirements of section 804.20—he allowed Ubben to make his desired phone calls before signing the form refusing the breathalyzer test, complying with *State v. Davis*, 922 N.W.2d 326 (Iowa 2019) (concluding the statute was complied with when officer did not permit defendant to call his wife before arriving at place of detention; there was no unreasonable delay in allowing phone calls), and *State v. Hicks*, 791 N.W.2d 89 (Iowa 2010) (requiring law enforcement to take affirmative action to ensure the request for a phone call is honored).

On our review of the record and the district court order, we also find even if the district court erred in admitting the evidence of Ubben's test refusal, the error was harmless. The district court specifically cited the clear signs of Ubben's intoxication to find him guilty of OWI, including the deputies being "unable to awaken" Ubben despite their repeated efforts, the strong smell of alcohol emanating from the vehicle and Ubben, his difficulty retrieving his driver's license, his disorientation and "greatly impaired ability to recall or perceive events," Ubben's inability to remember where he was going or even what state he was in, his inability to follow directions to recite the alphabet or numbers, classic signs of intoxication including slurred speech and bloodshot or watery eyes, and his failure of the HGN test. The evidence was more than sufficient to conclude Ubben operated while intoxicated, and the breath test refusal would have been needlessly cumulative; therefore any error in not suppressing it was harmless.[10] *See Garrity*, 765 N.W.2d at 597*.*

We need not address any remaining issues in Ubben's appellate brief. We affirm the district court's rulings on the motion to suppress and Ubben's convictions.

**AFFIRMED.**

---

[10] We note the parties stipulated to a trial on the minutes and that the district court then issued a written order finding Ubben guilty of both offenses. The district court did not mention and thus did not rely upon in its findings regarding the OWI that Ubben had refused the breath test.